EMILY E. HAMPTON, ADMINISTRATRIX OF A. M. HAMPTON, v. M. S. HAWKINS AND L. H. WINDHOLZ, RECEIVERS OF NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 26 February, 1941.)

**1. Automobiles § 23b—**

Where the owner of a truck, riding therein, is driven by his employee, the negligence or contributory negligence of the employee is in law attributable to the owner.

**2. Negligence § 19b—**

> Since the defendant has the burden of proof upon the issue of contributory negligence, a nonsuit on the ground of contributory negligence can be rendered only when contributory negligence is the only logical conclusion that can be drawn from plaintiff's own evidence, considered in the light most favorable to him.

**3. Railroads § 9—Evidence held to establish as matter of law contributory negligence on part of driver constituting proximate cause of crossing accident.**

> Plaintiff's intestate was fatally injured in a collision between his truck, driven by his employee, and defendant's train. The accident occurred at a right angle grade crossing on a clear day, in level country, and plaintiff's own evidence tended to show that the driver was familiar with the crossing and approached same at about ten miles an hour and could have stopped the truck almost instantaneously, and that his view of the approaching train was unobstructed for at least thirty feet from the crossing. *Held:* Even though plaintiff introduces evidence tending to show negligence on the part of the railroad company in failing to give timely signal of the approach of the train to the crossing, plaintiff's own evidence discloses that the driver was guilty of contributory negligence as a matter of law, which is imputed to intestate, since the only reasonable inference that can be drawn from the evidence is that the driver knew he was approaching a crossing and failed to look for the train when by doing so he could have seen it and avoided the collision and that such failure was a proximate contributing cause to the injury and death of plaintiff's intestate.

APPEAL by plaintiff from *Hamilton, Special Judge,* at October Term, 1940, of CAMDEN. Affirmed.

Action for wrongful death of plaintiff's intestate alleged to have been caused by the negligence of the defendants. Motion for judgment of nonsuit, renewed at the close of all the evidence, was allowed, and from judgment dismissing the action, plaintiff appealed.

*Q. C. Davis and John H. Hall for plaintiff, appellant.*
*K. Kenyon Wilson for defendants, appellees.*

DEVIN, J. The plaintiff's intestate came to his death as the result of a collision between a motor truck in which he was riding and one of defendant's freight trains on the Norfolk Southern Railroad. The motor truck was the property of plaintiff's intestate and was being driven for him at the time by his employee.

As there was evidence of negligence on the part of defendants in failing to give timely warning of the approach of the train to a grade crossing, it would seem that the only ground upon which judgment of nonsuit could be predicated was that plaintiff's evidence conclusively established contributory negligence upon the part of the driver of the

truck, whose negligence, if any, was in law attributable to the plaintiff's intestate.

As the burden of proof upon the issue of contributory negligence was upon defendants, it is the settled rule in this jurisdiction that judgment of nonsuit on this ground can be rendered only when a single inference, leading to that conclusion, can be drawn from the evidence. *Manheim v. Taxi Corp.,* 214 N. C., 689, 200 S. E., 382; *Cole v. Koonce,* 214 N. C., 188, 198 S. E., 637. As was said in *Hayes v. Tel. Co.,* 211 N. C., 192, 189 S. E., 499, judgment of nonsuit becomes proper only "when the contributory negligence of the plaintiff is established by his own evidence, and he thus proves himself out of court." It is equally well settled that on this motion the evidence must be considered in the light most favorable to the plaintiff.

Examining the record of the testimony in the light of these principles, we deduce the material facts and surrounding circumstances as follows:

The motor truck in which plaintiff's intestate was riding was being driven in an eastward direction over an unpaved public road in Currituck County. The road, as well as the local terrain, was level. The road, which was twenty feet wide from ditch to ditch, crossed defendant's railroad tracks at grade, at right angles, near Gregory Station. There was an elevation of twelve inches at the crossing. The injury occurred about 10:30 a.m., 16 May, 1938. The day was clear. There was no other traffic on the road. The train with which the truck collided was coming from the south, at a speed of forty miles per hour, approaching from the truck driver's right. The driver of plaintiff's intestate was familiar with the crossing, having driven over it, on an average of once a week, for several years. On the right of the driver of the truck, as he approached the crossing, scattered along a distance of some 250 yards, was a stable, barn, several small outhouses, and near the crossing a storehouse facing in the direction of the railroad tracks. On the front of the store was a porch, the roof supported by posts. The plaintiff's witness testified the store was "about 30 feet" from the tracks. However, it was admitted the defendant's right of way extended 33 feet westward, and the store and porch were beyond the right of way. The surveyor, who measured the distance, testified that the porch was 9.2 feet wide, that from the track to the front of the porch was 36.5 feet, making 45.7 feet to the building itself. The store building was 20 or 30 feet from the road, or 46 feet, according to the surveyor. Plaintiff's witness testified that along a wire fence, which ran from the end of the store south, parallel with the tracks, presumably to the barn, were weeds growing higher than the fence—5 or 6 feet. The truck was a ton and a half truck, and had been used eight or nine months. The brakes were in good condition.

The driver testified he had been driving previously that morning at a speed of 20 miles per hour, and that he reduced his speed to 10 miles per hour on passing the store, taking his foot off the accelerator. He testified that at that speed he could have stopped about as quick as he could put his foot on the brake. He testified there was a space between the stable and the store through which he could look to his right and see down the railroad tracks; that he looked at that point that morning and saw nothing. After passing the store the view to the right is unobstructed along the track in the direction from which the train came for 600 or more feet, the track curving slightly to the southeast. The driver of the truck testified that after passing the store he looked to his left— north—saw nothing, and that when he was 10 feet (at another time he said 15) from the railroad track he looked to his right and saw the train coming about 30 feet away. He put on his brake, but the front bumper of his truck was struck by the train, the truck was overturned and plaintiff's intestate killed.

The driver of the truck testified that his view was obstructed by the store and by the weeds. He first referred to them as bushes, but later explained he meant weeds. But the weeds could not have been in his line of vision to the southeast after he passed the store, as he had testified the weeds were along the fence that ran from the store south, parallel with the tracks.

It does not appear whether the posts, which supported the roof of the store porch, obstructed his view at all, but, if they did, after passing beyond the line of the store and porch, the driver of the truck had an unobstructed view to his right—to the south—if he had looked, and could have seen as large and conspicuous an object as a moving freight train, which, at the rate of speed testified, could hardly have been more than 120 feet away. There were no woods, hills, trees or buildings to conceal it. The land was level, the day clear. If the driver had looked to his right at any time while he traversed at 10 miles per hour the space between the store and the tracks, until too close to effectively apply his brakes, he must necessarily have observed the train in time to have stopped in safety. By his own testimony he could have stopped almost instantaneously.

His failure to stop before being struck by the train can be ascribed to no other cause than that, though he knew he was approaching and about to cross a main line railroad track, he did not look for the train, when by looking he could have seen it and avoided the collision. His failure so to do must be held a proximate contributing cause to the injury and death of the plaintiff's intestate, and sufficient in law to bar recovery. *Harrison v. R. R.,* 194 N. C., 656, 140 S. E., 598.

Many cases involving injuries due to collision between motor vehicles and trains at grade crossings have found their way to this Court. No good can be obtained from attempting to analyze the close distinctions drawn in the decision of these cases, for, as was said in *Cole v. Koonce, supra,* each case must stand upon its own bottom, and be governed by the controlling facts there appearing.

We conclude that the judgment of nonsuit must be

Affirmed.